**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>MIGUEL ANGEL RIVERA ROSARIO,<br><br>     Debtor. | CASE NO. 23-02291 MAG11<br><br>Chapter 11<br><br><br>FILED & ENTERED ON 11/9/2023 |

**OPINION & ORDER**

On July 28, 2023, Debtor Miguel Angel Rivera Rosario ("Debtor") filed his petition for relief under Chapter 11. Debtor designated his case in the petition as a single asset real estate ("SARE") case because he owns one commercial building located in Loiza, Puerto Rico (the "Property") and his only business is renting the Property to Fundación Para el Desarrollo de Hogar Propio Incorporado ("Fundación"). Secured creditor Hibiscus PR 73 LLC ("Hibiscus") holds a recorded first mortgage on the Property and a security interest in the rental proceeds derived from the Property. In August 2022 Hibiscus filed a state court action for the collection of rents produced by the Property. In such action Fundación consigned the monthly rents for June and July 2023 with the state court and since August 2023 it consigned the rents with the Bankruptcy Court. Consequently, the Debtor has not received any income from the Property since June of 2023.

Pending before the court is Debtor's expedited motion for authority to use cash collateral pursuant to 11 U.S.C. § 363 filed on September 1, 2023 (Dkt. # 25); the opposition filed by Hibiscus on September 18, 2023 (Dkt. # 33); Debtor's reply filed on October 5, 2023 (Dkt. # 50); and Debtor's amended proposed budget for the use of cash collateral filed on October 18,

2023 (Dkt. # 54). The court held a hearing on this matter on October 19, 2023 and took the same under advisement. (Dkt. # 68.) For the reasons stated below, Debtor's request for the use of cash collateral is hereby denied.

## I. JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(M) (orders approving the use or lease of property including the use of cash collateral). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

Debtor's Property is a commercial building in Loiza, Puerto Rico, described in the records of the Property Registry in the Spanish language as follows:

> RÚSTICA: Predio de terreno sito en el Barrio Torrecilla Alta del término municipal de Loíza, Puerto Rico, compuesto de las parcelas marcadas número Quince (15) y Dieciséis (16) en el plano de parcelación de la comunidad rural. La Torre, con una cabida de MIL TRESCIENTOS OCHENTA Y UN METROS CUADRADOS CON SEISCIENTOS DIECIOCHO MILESIMAS DE OTRO (1,381.618). En lindes por el NORTE, con Carretera Estatal Numero Ciento Ochenta y Siete (187); por el SUR, con parcela número Diecisiete (17) de la comunidad; por el ESTE, con la Calle Numero Veintitrés (23) de la comunidad y per el OESTE, área verde y el manglar de la comunidad.

The Property is recorded on page 67 of volume 221, lot number 10,489, Property Registry of Carolina, 3rd section. (Claims Register # 6-1; Certified English Translation of Joint Motion for Entry of Judgment, Dkt. # 46-10.) The Property is encumbered with a first mortgage in favor of Hibiscus, which has filed a secured claim in the amount of $7,050,959.13.[1] (Claims Register # 6-

---

[1] At this juncture, Hibiscus' proof of claim is deemed allowed under Fed. R. Bankr. P. 3001(f) absent an objection to the same.

1.) The mortgage deed executed by Debtor extends to "all rents, issues, proceeds and profits accruing and to accrue from said property." (Id. at p. 21.) Debtor's only tenant in the Property is Fundación, which currently pays $9,000 per month to occupy the building.

Debtor's contractual relationship with Hibiscus' predecessor, Firstbank Puerto Rico ("Firstbank"), dates back to 2003 and involves multiple parties and credit facilities. (Certified English Translation of the Second Amended Complaint filed by Firstbank Puerto Rico in state court on March 29, 2011, Dkt. # 46-9.) On July 8, 2010, Firstbank filed a collection of money and mortgage foreclosure case against Debtor before the Puerto Rico Superior Court, Rio Grande Part, Case No. FCCI2010-0449. (Id.) Per the Second Amended Complaint filed by Firstbank in March 2011, Debtor defaulted on his contractual obligations with Firstbank since at least 2010. (Id.) Debtor settled the complaint with Firstbank by consenting to the entry of judgment on June 24, 2011. (Certified English Translation of Joint Motion for Entry of Judgment, Dkt. # 46-10.)

In the consented judgment, Debtor acknowledged that as of June 24, 2011, he owed Firstbank under one credit facility the amount of $2,939,499.12, plus the past due interest that as of April 15, 2011, amounted to $633,892.87, $81,181.94 for late charges, $4,629.75 for negative escrow, $150.00 and $15.00 for inspection charges and returned check for insufficient funds, respectively, and $320,000.00 for costs, disbursements, and attorney's fees. (Id. at pp. 2-3.) Debtor also acknowledged that he owed Firstbank under a separate credit facility the amount of $100,000.00, plus past due interest, which as of April 15, 2011, amounted to $5,462.33, $234.54 for late charges, $10,000.00 for costs, disbursements, and attorney's fees. (Id. at p. 4.) On August 1, 2011, the Superior Court issued a judgment by stipulation against Debtor, among other parties. (Certified English Translation of Judgment by Stipulation, Dkt. # 46-13.)

LSREF2 Island Holdings, LTD. INC. ("LSREF2"), the entity that acquired the interest and rights to Debtor's loans with Firstbank prior to Hibiscus, moved the Superior Court for an order and writ of execution of judgment. (Certified English Translations of Order and Writ of Execution, Dkt. ## 46-11, 46-12.) This resulted in the issuance of an execution order dated July 3, 2014 for the foreclosure of Debtor's Property. (Id.) As explained by the parties at the cash collateral hearing, Debtor's property has not been foreclosed due to pending litigation in the Superior Court with Mr. Nahum Gómez, who purchased a parcel of Debtor's Property and seeks a court order for the segregation of the same. (Dkt. # 68.)

On May 1, 2014, Debtor executed an assignment of the leases and rents derived from the Property in favor LSREF2. (Certified English Translation of Assignment of Leases and Rents, Dkt. # 46-4.) This assignment of leases and rents was subscribed before Notary Public José A. Díaz Brugueras, Affidavit No. 489. (Id. at p. 10.) The assignment states in Section 2, in pertinent part, that Debtor:

> assigns to the Creditor, and grants to the Creditor, a first ranking secured interest in and to: (i) all right, title and interest of the Assignor in, over and under the present and future leases (collectively, the Assigned Leases"), including, without limitation, the leases described in Annex A attached hereto and made a part of this Assignment, with respect to any space or land located on the property described in Annex B attached hereto and made a part of this Assignment (the "Property"), (ii) all rents payable to Assignor under the Assigned Leases, including, without limitation, all rights of the Assignor to receive the proceeds of any insurance, eminent domain, indemnification or guaranty with respect to the payment of rents payable under the Assigned Leases (collectively, the "Rents").

(Id. at p. 1).

On June 30, 2016, LSREF2 commenced collection efforts of the assigned rents by sending a notice of assignment of lease to the Debtor's tenant, Fundación, demanding payment of all rents due to Debtor. (Certified English Translation of June 30, 2016 letter, Dkt. # 46-5.)

4

On May 7, 2021, Hibiscus, as successor of Firstbank and LSREF2, sent another collection letter to Fundación demanding payment of the rents due under the lease with Debtor. (May 7, 2021 letter, Dkt. # 33-8.) It is unclear how many payments, if any, Fundación paid to these creditors as demanded.

On August 11, 2022, Hibiscus filed a complaint against Debtor and Fundación before the Puerto Rico Superior Court, Loiza Part, Case No. LO2022CV00093, requesting $525,000 in past due lease payments owed by Fundación and Debtor, and a declaratory judgment ordering Fundación and Debtor to remit directly to Hibiscus any future lease payment. (Certified English Translation of Verified Complaint filed by Hibiscus in state court; Dkt. # 46-14.) On July 6, 2023, the Superior Court issued a Partial Judgment ordering Fundación and Debtor to pay all future rents to Hibiscus. (Certified English Translation of Partial Judgment, Dkt. # 46-15.)

On July 23, 2023, Debtor filed his petition for relief under Chapter 11. Whereas Hibiscus' secured claim is in the amount of $7,050,959.13, Debtor listed in schedule A/B the Property's market value at $1,200,000. (Dkt. # 1, p. 17.) On August 31, 2023, Fundación filed an interpleader action for this court to decide who is the rightful recipient of the rental proceeds.[2] (Adv. Proc. No. 23-00065, Dkt. # 1.)

On September 1, 2023, Debtor filed an expedited motion for authority to use cash collateral pursuant to 11 U.S.C. § 363. (Dkt. # 25.) On September 18, 2023, Hibiscus opposed the same. (Dkt. # 33.) The Debtor replied on October 5, 2023 and amended his proposed budget for the use of cash collateral on October 18, 2023 (Dkt. ## 50, 54).

---

[2] On October 16, 2023, Fundación requested to consign the funds of rental payments until resolution of the interpleader or further order from the court, which the court granted on October 31, 2023. (Adv. Proc. No. 23-00065, Dkt. # # 20, 24.) As stated, Debtor is currently not receiving any of the monthly rental payments from Fundación and will not do so until further order from this court.

### III.    APPLICABLE LAW AND DISCUSSION

Debtor seeks the entry of an order authorizing the use of cash collateral under 11 U.S.C. § 363. (Dkt. # 25.) Debtor argues that without this court's authorization to use the cash collateral, he will suffer immediate and irreparable harm since he will not be able to pay for his living expenses and will not be able to maintain the Property. At first, Debtor requested the use of cash collateral in the amount of $5,500 out of the $9,000 rental income he is supposed to receive monthly from Fundación. (Dkt. # 25.)  Under this proposed budget, Debtor would make adequate protection payments to Hibiscus in the amount of $3,500. However, Debtor later amended his cash collateral request reducing it to $3,000 and thereby increasing the adequate protection payments proposed to Hibiscus to $6,000. (Dkt. # 54.) Debtor also offers as adequate protection the maintenance of the building located in the Property which would be paid from the $3,000 to be received.

In support of his request, Debtor asserts that the continued operation of his business will preserve the going concern which will result in the benefit of Hibiscus and of priority and general unsecured creditors in this case. By contrast, Debtor states that without the use of cash collateral he will be forced to cease operations. Moreover, Debtor argues that he is offering Hibiscus the payment of a portion of the rental income as adequate protection because he has nothing else to offer as his only source of income is the rental income derived from the Property. (Dkt. # 50.) He insists that the use of cash collateral is the only means for him to achieve reorganization under Chapter 11.

Hibiscus opposes Debtor's use of cash collateral. (Dkt. # 33.) It argues that Debtor has been grossly mismanaging his operations and has been embroiled in legal proceedings for over a decade with his lienholder. Hibiscus asserts that Debtor's use of the cash collateral pre-petition

6

despite the enforcement of the assignment of rents, forced it to seek relief in state court. Hibiscus

adds that it has not received any mortgage payment from Debtor since at least 2014 when Debtor

defaulted with the provisions of the consent judgment and the debt became due and payable.

Furthermore, Hibiscus maintains that Debtor is confusing two separate and distinct interests and

that adequate protection for the cash collateral, which consists of the rents paid by Fundación, is

not the same as the adequate protection for the real estate collateral. Lastly, Hibiscus argues that

a replacement lien on future rents, which is property over which Hibiscus already has a security

interest, cannot be considered adequate protection pursuant to 11 U.S.C. §§ 361 & 363.

11 U.S.C. § 363 governs a debtor's use of cash collateral. 11 U.S.C. § 363(a) defines cash

collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or

other cash equivalents whenever acquired in which the estate and an entity other than the estate

have an interest," including "the proceeds, products, offspring, rents, or profits of property and

the fees, charges, accounts or other payments for the use or occupancy of rooms and other public

facilities in hotels, motels, or other lodging properties subject to a security interest rents as

provided in [11 U.S.C. §] 552(b)."

11 U.S.C. § 552 governs the post-petition effects of security interest. 11 U.S.C. § 552(b)

is an exception to the general rule established in 11 U.S.C. § § 552(a) that property acquired after

the commencement of bankruptcy goes into the bankruptcy estate free and clear of any pre-

bankruptcy security interests. Specifically, pursuant to 11 U.S.C. § 552(b)(2) if, prior to the

commencement of bankruptcy, the debtor and creditor entered into a security agreement creating

a security interest in property and its rents, then the "security interest extends to such rents . . .

acquired by the estate after the commencement of the case to the extent provided by such

security agreement." Id.

7

11 U.S.C. § 363(p)(2) places upon Hibiscus the burden of proof on the issue of the validity, priority, or extent of its interest in Debtor's cash collateral. In Puerto Rico, "an assignment of rents becomes effective against third parties after the date certain included in the document of assignment, be it a public deed or a private document authorized by a notary public through an affidavit." In re Nat'l Promoters & Servs., 499 B.R. 192, 203 (Bankr. D.P.R. 2013). Here, Hibiscus has shown that Debtor assigned prepetition his rental proceeds in the mortgage deed encumbering the Property and in the assignment of the leases and rents executed before a notary public with a date certain. The court also notes that at no point has Debtor disputed the validity of Hibiscus' perfected security interest on the rents. Thus, Hibiscus has met its burden under 11 U.S.C. § 363(p)(2). The rental proceeds are Hibiscus' cash collateral.

Pursuant to 11 U.S.C. § 363(c)(2), a debtor is prohibited from using a creditor's cash collateral in the ordinary course of business absent authorization by the court or consent from the entity that has an interest in the collateral. 11 U.S.C. § 363(e) requires that any authorized use of cash collateral be conditioned upon a debtor's provision of adequate protection to the entity that has an interest in the collateral. As such, for this court to authorize Debtor's use of cash collateral absent Hibiscus consent, Hibiscus' interest must be adequately protected.

Debtor bears the burden of proof on the issue of adequate protection under 11 U.S.C. § 363(p)(1). 11 U.S.C. § 361 provides examples of different forms adequate protection can take, including cash payments or replacement liens to cover decreases in value, or other forms of adequate protection that "result in the realization by [the] entity of the indubitable equivalent of such entity's interest in such property." Here, Debtor offers to maintain the value of the Property by keeping the building in the conditions needed for Fundación to continue payments of post-petition rents along with payments in cash for adequate protection to come from the monthly

8

rents paid by Fundación, which Debtor recognizes are Hibiscus' cash collateral. (Dkt. # 50, p. 3.)

Debtor argues that the "essence of adequate protection is the assurance of the maintenance and

continued responsibility of the lien value during the interim between the filing and the

confirmation." (Dkt. # 50, p. 5.)

However, "[w]hen considering adequate protection for the use of rents, courts have

recognized that Section 552(b) creates a security interest in post-petition rental income that is

separate and distinct from the creditor's security interest in the property securing the mortgage."

In re Nat'l Promoters & Servs., 499 B.R. at 208. "[W]here [] there is a specific assignment of

rents given as security, a diversion of any portion of the rents to a party other than the secured

party is clearly a diminution of the secured party's interest in the assignment of rents portion of

the security." In re Builders Group & Dev. Corp., 502 B.R. 95, 122 (Bankr. D.P.R. 2013)

(quoting In re Smithville Crossing, LLC, 2011 Bankr. LEXIS 4605, *29 (Bankr. E.D.N.C.

2011)). "Any such decrease attributable to the [d]ebtor's usage, therefore, must be protected by

cash payments from another source, an additional or replacement lien, or other such indubitable

equivalent." Id. See also, In re Putnal, 483 B.R. 799, 805 (Bankr. M.D. Ga. 2012) ("Section

552(b) provides [a secured creditor] with a security interest in post-petition rents that is separate

from its interest in the real property. Because the rents are separate collateral, any use of the rents

results in a dollar-for-dollar reduction in the value of that collateral.").

Here, Debtor has not shown, pursuant to 11 U.S.C. § 363, that there is adequate

protection for Hibiscus' security interest in the rent proceeds which is the cash collateral subject

to Debtor's motion. Debtor offers to maintain the value of the Property and to pay Hibiscus cash

as adequate protection to come from the monthly rents paid by Fundación. He admits to having

nothing else to offer. But, "the fact that rental income is utilized to pay the operating expenses of

9

the [premises] by itself does not provide the adequate protection required under 11 U.S.C. §363

for the security interest regarding the assignment of rents." In re Builders Group & Dev. Corp.,

502 B.R. at 122. And, to the extent Debtor is offering as adequate protection a replacement lien

on future rents, a lien on the same rents in which Hibiscus already has a lien does not qualify as

adequate protection. Hibiscus cites to several cases in support of this argument. See, In re

Smithville Crossing, 2011 Bankr. LEXIS 4605 at *31; In re Buttermilk Towne Ctr., LLC, 442

B.R. 558, 567 (B.A.P. 6th Cir. 2010); In re Swedeland Dev. Group, Inc., 16 F.3d 552, 565 (3rd

Cir. 1994). This court agrees. Debtor cannot give Hibiscus a replacement lien in future rents

because Hibiscus' security interest already extends to those rents.

Finally, the court notes that Debtor asks that this court make an exception to the adequate

protection requirement established for the use of cash collateral given that this case is a SARE

case and, by definition, the Property generates substantially all of the Debtor's income. However,

this argument cannot carry the day for Debtor as he has not cited any authority, case law or

otherwise, for this proposition. The court acknowledges that a debtor attempting to reorganize

has a compelling need to use cash collateral.  However, Debtor cannot circumvent the express

requirements of the Bankruptcy Code, which mandate giving Hibiscus adequate protection for its

interests absent Hibiscus' consent for Debtor's use of cash collateral.

## IV.     CONCLUSION

For the reasons stated above, the court finds that Debtor has not provided adequate protection to Hibiscus for the use of cash collateral. As such, the court hereby denies Debtor's expedited motion for the use of cash collateral. (Dkt. # 25). Absent the consent of Hibiscus, Debtor is prohibited from using the rent proceeds of the Property.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of November, 2023.

María de los Ángeles González
United States Bankruptcy Judge