**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>MIGUEL ANGEL RIVERA ROSARIO,<br><br>    Debtor. | CASE NO. 23-02291 MAG7<br><br>Chapter 7<br><br><br>FILED & ENTERED ON 6/18/2026 |

**OPINION AND ORDER**

On July 28, 2023, Debtor Miguel Angel Rivera Rosario ("Debtor") filed his petition for relief under Chapter 11 of the Bankruptcy Code. (Dkt. #1.) On September 25, 2023, Mr. Nahum Gómez Hidalgo ("Mr. Gómez"), as a party in interest, requested modification of the automatic stay to allow him to pursue, as part of foreclosure proceedings in state court, the release and segregation of a parcel of land which was originally part of a real estate property owned by the Debtor in Loíza, Puerto Rico (the "Loíza Property"), but was allegedly sold to Mr. Gómez with the mortgage creditor's consent. (Dkt. #40.) On October 10, 2023, Debtor replied and stated that he consented to Mr. Gómez's request (Dkt. #52.) Subsequently, on October 23, 2023, Debtor and Mr. Gómez filed a stipulation (the "Stipulation") consenting to partial relief from the automatic stay for this purpose. (Dkt. #60.) Then, on November 20, 2023, Debtor requested to convert this proceeding from Chapter 11 to Chapter 7 (Dkt. #81.) On November 21, 2023, the court approved the Stipulation (Dkt. #83) and on November 22, 2023, the court granted Debtor's request to convert to Chapter 7 and appointed Wigberto Lugo Mender as the Chapter 7 Trustee (the "Trustee") for the Debtor's estate. (Dkt. ##85, 86, 87.)

Pending before the court is a request for leave, filed by Mr. Gómez on May 14, 2025, to allow him to file a motion in state court seeking to record a lis pendens ("cautionary notice")

over the Loíza Property in the Property Registry of Puerto Rico. (Dkt. #165.) On October 14, 2025, the Trustee filed an opposition to Mr. Gómez's request and on October 17, 2025, Mr. Gómez filed a reply to the Trustee's opposition. (Dkt. ##233, 234.) Accordingly, on December 2, 2025, the court held a hearing and allowed Mr. Gómez sixty (60) days to supplement his request and the Trustee fourteen (14) days thereafter to reply. (Dkt. #242.) Mr. Gómez complied, filing his supplementary motion on January 29, 2026 (Dkt. #245.) Then, on February 12, 2026, mortgage creditor Hibiscus PR 73, LLC ("Hibiscus") opposed Mr. Gómez's supplementary motion (Dkt. #246) and on February 19, 2026, Mr. Gómez replied to Hibiscus's opposition. (Dkt. #248.)

For the reasons stated below, Mr. Gómez's request for leave to file a motion in state court seeking to record a cautionary notice over the Loíza Property in the Property Registry of Puerto Rico is hereby denied.

## I.     JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), L. Civ. R. 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.    BACKGROUND

During 2010, Debtor was involved in state court litigation with FirstBank Puerto Rico ("FirstBank"), as mortgage creditor, related to the Loíza Property owned by Debtor. (Dkt. #245-4, pp. 1–2.) In June 2011, Debtor and FirstBank requested the state court to enter judgment by stipulation in those proceedings. Id. at 2. Among the terms of the stipulation, Debtor and FirstBank agreed to the sale of the Loíza Property encumbered by FirstBank's loans. FirstBank

also agreed to receive installment payments from Debtor while the sale took place. The judgment pursuant to the stipulation was entered by the state court on August 1, 2011. Id. at 2.

On September 19, 2011, Debtor requested authorization from FirstBank to segregate and sell a 676.7606 square-meter parcel of land that was part of the Loíza Property. The parcel contained the structure of a food business known as the Blue Iguana (the "Blue Iguana Parcel"). Id. at 3–4. Thereafter, on October 20, 2011, FirstBank drafted an authorization letter consenting to the segregation and sale of the Blue Iguana Parcel, as requested by Debtor, subject to certain terms and conditions. Id. at 4. First, Debtor was required to transfer to FirstBank and merge with the Loíza Property an adjacent parcel of land measuring 640.5009 square meters, designated Parcel 17-B. Id. Second, FirstBank set the sale price of the Blue Iguana Parcel at $50,000.00 and authorized Debtor to enter into a purchase option agreement for the property for $7,500.00, stipulating that the option must be exercised within a 90-day period. Id. Third, Debtor was required to carry out, at his own expense, the necessary procedures for the segregation of the Blue Iguana Parcel and the consolidation of Parcel 17-B. Id. Finally, it was stipulated that the authorization provided in the letter was valid for ninety (90) days. Id.

On November 15, 2013, LSREF2 Island Holdings, LTD ("LSREF2") filed a motion in state court to substitute FirstBank in the proceedings as its successor and requested execution of judgment. Id. at 5–6. The state court ordered execution of the Loíza Property on July 3, 2014, but the procedures were interrupted for reasons not pertinent here. Id. The case was reopened on February 9, 2016, and LSREF2 sought a new order of writ and enforcement of judgment. Id. On February 16, 2016, Debtor informed the state court that, with FirstBank's consent, Mr. Gómez had purchased the Blue Iguana Parcel. Id. at 7. Debtor requested that the state court allow Mr. Gómez to intervene in the enforcement of judgment and foreclosure proceedings. Id. LSREF2

3

opposed the intervention, alleging that Mr. Gómez was not a party to the original proceedings. Id. at 7-8. On August 22, 2016, Mr. Gómez requested to intervene in the foreclosure proceedings as an indispensable party, and LSREF2 opposed on the same grounds. Id. at 8. The state court held an evidentiary hearing on November 15 and December 2, 2016, to determine whether Mr. Gómez was an indispensable party and whether FirstBank had received payments with knowledge that they came from Mr. Gómez. Id. at 8–9.

By Resolution of February 6, 2017, the state court concluded that FirstBank had received $150,000.00 with knowledge that the payments came from Mr. Gómez as part of the sale of the Blue Iguana Parcel. Id. at 9. Therefore, the state court allowed Mr. Gómez to intervene and ruled that LSREF2 was required to release the Blue Iguana Parcel from the mortgage and allow its segregation. Id. LSREF2 appealed the state court's ruling, and the appeal eventually reached the Supreme Court of Puerto Rico. The Supreme Court affirmed the state court's determinations, concluding that Mr. Gómez could intervene pursuant to Rule 21.5 of the Puerto Rico Rules of Civil Procedure. The Supreme Court reasoned that the intervenor asserted rights distinct from the initial action but directly related to the property subject to foreclosure and, therefore, was required to establish his rights in the property. Id. at 33. Judgment was entered on December 4, 2019. (Dkt. #245-4.) On June 14, 2020, LSREF2 was substituted by Hibiscus in the state court proceedings as its successor. (Proof of claim 6-1, p. 10.)

On November 29, 2021, the state court ordered Debtor to provide evidence of all actions taken toward the segregation of the Blue Iguana Parcel. (Dkt. #245-5, p. 7.) On October 5, 2021, Debtor filed an informative motion with the state court which included copies of the survey maps regarding the segregation of the Blue Iguana Parcel and the grouping of Parcel 17B. Id. In that motion, Debtor explained that the survey maps were to be submitted for approval before the

4

corresponding governmental agencies. Id. However, on October 19, 2021, Mr. Gómez opposed

the survey maps submitted by Debtor, alleging that the survey maps did not conform to the

physical reality of the lot where the Blue Iguana is located. By Resolution of April 19, 2023, the

state court denied Mr. Gómez's opposition and found, in part, that:

> From the aforementioned motions, it appears that a new controversy has arisen
> between the intervenor and the defendant regarding the total area (*cabida*) of the
> parcel of land sold to the intervenor, where the Blue Iguana business is situated.
> Both parties presented maps with different area measurements. That is, the
> parties' boundaries are confused (*confundidos sus linderos*).
>
> An action to settle boundaries (*deslinde*) is distinct from the action for collection
> of money and foreclosure of mortgage which is the subject of the case at bar.
> Regarding the present case and in order for it to proceed, the defendant must take
> the pertinent steps for the segregation of the property where the Blue Iguana
> business is located, and for the grouping of parcel 17B. This court will not
> proceed to resolve issues of area (*cabida*) and boundaries that must be elucidated
> in a separate action for settlement of land boundaries.

Id. In its Resolution, the state court went on to clarify that, "after so many procedural events,

what remains pending in the record is the segregation of the property where the Blue Iguana is

located and the grouping of parcel 17B, in order to conclude the process of execution of

judgment and finalize the lawsuit." Id. at 8.

Nevertheless, Debtor filed a Chapter 11 bankruptcy petition on July 28, 2023. (Dkt. #1.)

On September 25, 2023, Mr. Gómez sought relief from the automatic stay. (Dkt. #40.) Mr.

Gómez informed the court that, upon the filing of the bankruptcy petition, the state court had

stayed the foreclosure proceedings. Therefore, Mr. Gómez requested modification of the stay to

continue the proceedings in state court to seek the release and segregation of the Blue Iguana

Parcel. Debtor did not oppose Mr. Gómez's request and Debtor informed the court that the

parties would file a stipulation to that effect. (Dkt. #52.) On October 23, 2023, Debtor and Mr.

Gómez filed a stipulation in which they agreed to the following:

1. Debtor hereby agrees that Mr. Gomez requests the CFI the continuation of the proceedings in the "Foreclosure Litigation", Case. No. FCCI2010-00449, with the limited and specific purpose of completing the legal proceedings to release and segregate his lot of land from Debtor's real estate property.

2. Mr. Gomez agrees that the continuation of any other proceeding or legal case between the parties, judicial or administrative, is not authorized by the Bankruptcy Court nor agreed by Debtor.

3. Mr. Gomez acknowledges that the continuation of a proceeding different or additional to the one agreed in this Stipulation may be in violation of the automatic stay pursuant to 11 U.S.C. §362 (k) and Debtor will pursue his rights.

4. The modification of the automatic stay that is being agreed by the parties to this Stipulation is not extensive to any other party or legal matter which is not specifically contemplated in this document.

5. Parties establish that the reopening of the "Foreclosure Litigation" shall not be considered as a lift or modification of the automatic stay in favor of Hibiscus and, in no way, shall be considered as an agreement to the foreclosure of the real estate property that belongs to the Debtor and is part of the bankruptcy estate.

6. Debtor agrees to cooperate with the proceedings for the release and segregation of the lot of land that belongs to Mr. Gómez.

7. Mr. Gómez agrees to manage and pay the amounts owed to the "Centro de Recaudación de Ingresos Municipales", known as CRIM, that corresponds to his lot of land since February 13, 2012, date in which the property was sold to him.

8. Effective upon the date of this Stipulation, both parties release and forever discharge each other from any and all causes of action, suits, damages, liabilities, torts, costs and expenses including, but not limited to attorney's fees, known and unknown, for the controversies and situations occurred prior to this Stipulation in relation to the sale, release and segregation of the lot of land object of this agreement. The foregoing release and discharge does not apply to causes of action, suits, damages, liabilities, torts, costs and expenses including, but not limited to attorney's fees that Gómez may have against the debtor in the event that the intended formal segregation of Gómez'[s] property cannot be realized or completed for actions or omissions ascribable to the debtor.

9. This stipulation shall be adopted and incorporated into the Debtor's Chapter 11 Plan of Reorganization, and/or any subsequent amended plan and shall

> constitute the treatment for Nahum Gomez Hidalgo. If any provision of the Chapter 11 Plan is in conflict with the stipulated terms herein, this stipulation will be controlling, binding and will supersede any other document.

(Dkt. #60, pp. 4-5.) The stipulation was approved by the court on November 21, 2023. (Dkt. #83.) On November 22, 2023, the case was converted from Chapter 11 to Chapter 7 and Wigberto Lugo Mender was appointed as the Trustee. (Dkt. ##86, 87.)

On May 14, 2025, Mr. Gómez requested that the court grant leave to move the state court to order that a *lis pendens* ("*anotación preventiva*" or cautionary notice) be recorded over the Loíza Property in the Property Registry of Puerto Rico. (Dkt. #165.) Mr. Gómez alleged that the sale of the Blue Iguana Parcel was perfected on February 13, 2012, with FirstBank's knowledge and express consent. Id. at 1. Mr. Gómez stated that FirstBank received $150,000.00 as the sale price and applied the proceeds of the sale to the mortgage debt, at which point FirstBank was required to recognize and allow the release of the Blue Iguana Parcel. Id. at 1-2. Mr. Gómez further argued that granting the pending leave to file a motion to record a cautionary notice with the state court would be consistent with this court's order from November 21, 2023, which allowed Mr. Gómez to continue the foreclosure proceedings in state court for the purpose of segregating the Blue Iguana Parcel. Id. at 3. Mr. Gómez asserted that the cautionary notice would protect his rights in the Blue Iguana Parcel by providing notice to potential purchasers or creditors and would not prejudice the bankruptcy estate because it merely preserves the status quo and protects his preexisting rights. Id. He further stated that the notice would assist the Trustee in fulfilling his fiduciary duty to disclose material information regarding estate assets to all interested parties. Id.

The Trustee filed an opposition to Mr. Gómez's request. (Dkt. #233.) The Trustee stated that, as of the petition date, the Loíza Property was wholly owned by, and titled to, the Debtor and therefore became property of the bankruptcy estate. Id. at 2. The Trustee further asserted that

the Blue Iguana Parcel has not been transferred to Mr. Gómez through a deed and that no transfer has been recorded in the Property Registry of Puerto Rico. Id. The Trustee argued that under Puerto Rico law, a deed is required to transfer real property. Id. at 6. The Trustee stated that the agreement between the Debtor and Mr. Gómez constitutes, at most, a bilateral promise to purchase and sell the Blue Iguana Parcel, which creates only a personal obligation and not a real property right. Id. at 7. The Trustee further contended that the annotation of a cautionary notice would affect his rights under 11 U.S.C. § 363. Id. at 9. He also argued that, upon the filing of the bankruptcy petition and subsequent conversion to Chapter 7, the unsegregated Blue Iguana Parcel became property of the bankruptcy estate. Id.

Additionally, the Trustee asserted that he holds a judicial lien superior to any interest claimed by Mr. Gómez pursuant to 11 U.S.C. § 544(a)(1), and that he also has the rights of a bona fide purchaser of real property under § 544(a)(3). Id. at 10-11. The Trustee contended that he is the party holding the superior lien and the rights of a third-party purchaser. Id. He further argued that the stipulation between Debtor and Mr. Gómez contains no language waiving the rights of a subsequently appointed trustee. Id. at 11. Therefore, the Trustee maintained that he is entitled to continue administering the Loíza Property, including the Blue Iguana Parcel, as part of the bankruptcy estate. Id.

On December 2, 2025, the court held a hearing on the contested matter.  After hearing the parties' arguments, the court ordered Mr. Gómez to supplement his position and granted the Trustee an opportunity to reply. (Dkt. #242.) During the hearing, Hibiscus appeared as the mortgage creditor of the Loíza Property. The court allowed Hibiscus to state its position in a limited manner, noting that Hibiscus had not previously filed any written position regarding the controversy. Mr. Gómez filed his supplemental motion on January 29, 2026. (Dkt. #245.) He

claimed that he holds a vested ownership right in the Blue Iguana Parcel and that the state courts effectively divested Debtor of that property. Id. at 6-7. He argued that the parcel is no longer property of the estate and that this matter concerns the protection of his private property rights, rather than the administration of estate assets. Id.

Mr. Gómez further argued that the doctrine of *res judicata* applies because a prior judgment vested him with ownership of the Blue Iguana Parcel. Id. at 13-17. He also contended that this court must give full faith and credit to state court judgments under 28 U.S.C. § 1738, asserting that his property rights have already been adjudicated and must be honored. Id. He argued that the Trustee and Hibiscus are precluded from asserting inconsistent positions in the bankruptcy proceedings. Id. Mr. Gómez also asserted that, under 11 U.S.C. § 541(d), the estate holds only bare legal title to the Blue Iguana Parcel, while his equitable ownership remains beyond the Trustee's reach. Id. at 17-19. He argued that the Trustee's avoidance powers under § 544(a)(3) are governed by Puerto Rico law, under which recordation in the Property Registry is declarative rather than constitutive of property rights. Id.

Mr. Gómez further contended that a purchaser with knowledge of inaccuracies in the Property Registry cannot claim bona fide purchaser status. Id. He argued that the Trustee had actual notice of his rights through the bankruptcy record and that the Trustee's strong-arm powers cannot create property rights where none exist. Id. Mr. Gómez also alleged that the failure to complete the segregation of the parcel is attributable to the conduct of Hibiscus and its predecessors. Id. He further argued that a cautionary notice is a procedural mechanism that does not create a substantive encumbrance but serves to preserve the status quo and reflect an ongoing dispute in the Property Registry of Puerto Rico. Id. at 21. Finally, Mr. Gómez requested equitable subordination of Hibiscus's claim under 11 U.S.C. § 510(c), alleging inequitable

conduct. Id. at 20. However, the court notes that equitable subordination must generally be pursued by the Trustee and requires an adversary proceeding. Fed. R. Bankr. P. 7001(h); Dayton Title Agency, Inc. v. PNC Bank, 527 B.R. 289 (Bankr. S.D. Ohio 2015).

Hibiscus opposed Mr. Gómez's supplemental motion. (Dkt. #246.) Hibiscus argued that *res judicata* and collateral estoppel do not apply because there is no identity of causes between the state court proceedings and the bankruptcy case. Id. at 5-6. Hibiscus further contended that the state court judgments did not determine ownership of the Blue Iguana Parcel or whether title was ever transferred to Mr. Gómez prior to the bankruptcy filing. Id. at 6-7. Mr. Gómez replied, asserting that the state courts fully adjudicated his ownership rights and that Hibiscus's arguments constitute an impermissible collateral attack. (Dkt. #248.)

This court acknowledges that Mr. Gómez obtained a prepetition interest in the Blue Iguana Parcel sufficient to permit intervention in the foreclosure proceedings. However, the segregation of the parcel was never completed, and the interest was not recorded in the Property Registry of Puerto Rico prior to the bankruptcy filing. The fact that the transaction occurred outside of the scope of the Property Registry has consequences upon the filing of the petition and its conversion to Chapter 7.

### III.   APPLICABLE LAW AND DISCUSSION

#### a.  Cautionary Notice of Rights in the Property Registry

Article 44 of Law No. 210 of December 8, 2015, known as the Law of the Property Registry of Puerto Rico, establishes who may seek a cautionary notice of rights in the Property Registry. P.R. Laws Ann. tit. 30, § 6064. Pertinent here, Article 44(1) provides that any person who claims, in a judicial proceeding, ownership of real property or the constitution, declaration, modification, or extinction of a registrable right may request a cautionary notice. P.R. Laws Ann. tit. 30, § 6064(1). Article 44(2) further provides that any person who claims, in a judicial

proceeding, any circumstance affecting title to real property—including the validity or invalidity of a title related to the acquisition, constitution, declaration, modification, or extinction of a registrable right—may also request a cautionary notice. P.R. Laws Ann. tit. 30, § 6064(2).

When a cautionary notice is sought under Article 44(1) or (2), Article 45 requires a court order. P.R. Laws Ann. tit. 30, § 6065. Pursuant to Article 42, a cautionary notice may become a registered right once such right is acquired, and such rights will have effect **from the date the notice is presented in the registry**. P.R. Laws Ann. tit. 30, § 6062 (emphasis added). Additionally, when a court enters judgment in favor of a claimant under Article 44(1) or (2), the judgment and judicial mandate serve as title for the corresponding registration of the real property right. P.R. Laws Ann. tit. 30, § 6066. Accordingly, a cautionary notice in the Property Registry would affect the Loíza Property by preserving priority against future rights and potentially converting the claimed interest in the Blue Iguana Parcel into a registered real property right. The court must therefore consider how such action would affect the administration of the estate and the Trustee's rights in estate property.

b.  **The Chapter 7 Trustee's priority rights under 11 U.S.C. § 544**

Pertinent here, Section 544(a) states that, as of the commencement of the case, the trustee has the rights and powers of:

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

Pursuant to Section 544, the Trustee's position is "as if he were a bona fide purchaser who bought the property from the debtor on the filing date and simultaneously perfected the transfer by recording a deed, or if he had extended credit to the debtor on the filing date and on the same date had obtained a judgment lien against the property." HSBC Bank USA, N.A. v. Gold (In re Taneja), 427 B.R. 109, 116 (Bankr. E.D. Va. 2010). The powers of 11 U.S.C. § 544 may be claimed by a Chapter 7 trustee offensively and defensively. Offensively, a Chapter 7 trustee may avoid any transfer of property of the debtor or any obligation incurred by the debtor that would be voidable by the judgment lien creditor or by the bona fide purchaser. Avoidance powers under § 544 are limited by § 546.

Defensively, however, a Chapter 7 trustee may object to actions that could affect the priorities he has obtained through § 544(a), and the recording of a cautionary notice in the Property Registry is considered one such action. "Section 544(a)(3) provides that '[t]he trustee shall have, as of the commencement of the case . . . the rights and powers of, *or* may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -- . . . a bona fide purchaser.'" Morris v. Kasparek (In re Kasparek), 426 B.R. 332, 344 (10th Cir. B.A.P. 2010) (italic in original). "The rights and powers of a bona fide purchaser include the right to obtain title to property free of certain unrecorded interests; the exercise of that right does not necessarily require the avoidance of a transfer." Id. The "status as a bona fide purchaser is not time-limited" and, therefore, may be used defensively. In re Talen Energy Corp., 2025 Bankr. LEXIS 201, *4 (Feb. 4, 2025). See also Stearns Bank, N.A. v. Rent-A-Tent, Inc. (In re Rent A Tent, Inc.), 468 B.R. 442, 455 (Bankr. N.D. GA. 2012).

12

In <u>Miranda v. Banco Popular de P.R. (In re Ortiz)</u>, 2020 Bankr. LEXIS 232 (Jan. 29, 2020) the bankruptcy court explained:

> "As a hypothetical bona fide purchaser, the trustee under this subsection is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case. Varying results have been reached in cases concerning acknowledgment of deeds that are defective in one way or another." See Alan N. Resnik & Henry J. Sommer, 5 <u>Collier on Bankruptcy</u> ¶ 544.05 (16th ed. 2019).
>
> Moreover, "[t]he trustee's bona fide purchaser status, as with the other strong arm powers, is not subject to the trustee's actual knowledge of facts. However, if under applicable law the trustee would have constructive notice of an interest in real estate, the trustee's avoiding powers are restricted by such notice." Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., <u>Bankruptcy Law Manual</u>, §9.7 (5th ed. 2019).

<u>Id</u>. at *30-31. Furthermore, the trustee's status under § 544 is determined on the date the bankruptcy petition is filed and not on the date of conversion to chapter 7. <u>Id.</u> In addition, "a number of courts have concluded that the trustee's § 544(a)(3) powers take precedence over any limitations imposed by § 541(d) on the trustee's interest in property." <u>In re Cascade Oil Co.</u>, 65 B.R. 35, 40 (Bankr. D. Kan. 1986). "Fundamental to a Chapter 7 proceeding is that the appointed Chapter 7 Trustee has the sole statutory authority to determine the disposition of property of the estate." <u>In re Mahar</u>, 2025 Bankr. LEXIS 3116, *14-15 (Bankr. E.D. Va. Dec. 2, 2025).

Crucially, the court is not, at this stage, determining the ultimate validity or priority of Mr. Gómez's interest in the Blue Iguana Parcel. The court recognizes that the state courts, including the Supreme Court of Puerto Rico, have determined that Mr. Gómez has the right to pursue segregation of the Blue Iguana Parcel as part of ongoing foreclosure proceedings. Which is precisely why this court approved the Stipulation filed by Mr. Gómez and Debtor. Nor is the court deciding whether to grant further modification from the automatic stay in connection with the Stipulation, given that Mr. Gómez filed a motion for leave rather than a motion for relief

13

from stay. And, importantly, the court notes that while filing a motion for relief from stay would have been more appropriate in this instance, doing so would not have ultimately altered this ruling. Rather, at this stage, the court is simply determining whether it is appropriate to grant leave to Mr. Gómez to move the state court to order a cautionary notice, the recording of which would directly affect the Loíza Property, currently protected by the Trustee's rights under § 544.

Here, the Blue Iguana Parcel was not segregated, and no deed was recorded as of the petition date. Accordingly, under § 544, the Trustee may not have had notice[1] of any interest held by Mr. Gómez as of the commencement of the case. And seeing as though a trustee's bona fide purchaser status under § 544 is not subject to a trustee's actual knowledge of facts, the Trustee, at this time, has met his burden of demonstrating that the requested leave is an action that could impair his ability to properly administer the Loíza Property as estate property. By way of example, were the state court to order the cautionary notice on the Loíza Property and were Mr. Gómez to subsequently complete segregation of the Blue Iguana Parcel, Mr. Gómez would effectively be able to claim that he had acquired a real property interest in the Loíza Property **as of the date the cautionary notice was presented in the Registry of Property**. In his Individual Estate Report, the Trustee has indicated that the Loíza Property may be subject to sale. (Dkt. #247.) Therefore, the recordation of a cautionary notice would directly interfere with the Trustee's present right to sell the Loíza Property.

Balancing the relevant factors, granting leave at this stage would risk interfering with the Trustee's statutory duties and the orderly administration of the estate, and, as such, the request for leave is denied. However, this finding does not preclude Mr. Gómez from continuing to

---

[1] At this time, the court has not been presented with whether the Trustee had constructive notice of the alleged sale to Mr. Gómez, and if such constructive notice affects the Trustee's rights pursuant to 11 U.S.C. §544.

14

pursue segregation of the Blue Iguana Parcel in state court and, if the Trustee were to propose a sale of the Loíza Property, from objecting to the same, as is his right. The partial relief from stay the court granted Mr. Gómez back on November 21, 2023, remains in full effect. Therefore, this ruling is simply a determination as to the request for leave as presented. Nothing more, nothing less.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Gómez's motion requesting the court leave to file a motion in state court to seek the recordation of a cautionary notice over the Loíza Property in the Property Registry of Puerto Rico (Dkt. #165), as supplemented (Dkt. #245), is denied.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of June 2026.

María de los Ángeles González
United States Bankruptcy Judge